IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES E. BRAUN, ) | |
| ) | Civil Action No. 09 - 83J |
| Plaintiff, ) | |
| ) | Judge Kim R. Gibson / |
| v. ) | Magistrate Judge Lisa Pupo Lenihan |
| ) | |
| STATE CORRECTIONAL INSTITUTION ) | |
| AT SOMERSET, et al ) | |
| ) | |
| Defendants. ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.     RECOMMENDATION**

It is respectfully recommended that the Motion to Dismiss filed by the Commonwealth Defendants (doc. no. 7) be granted except as to Plaintiff's state law claim of negligence against Defendant Patton.

**II.    REPORT**

Plaintiff, James Braun, an inmate presently incarcerated at the State Correctional Institution at Somerset, Pennsylvania, commenced this civil action by a petition to proceed *in forma pauperis* filed on or about January 14, 2009 and a complaint filed on or about January 16, 2009, in the Court of Common Pleas of Somerset County, Pennsylvania at case number 2009-50031. The Commonwealth Defendants (identified below) filed with this Court a Notice of Removal on March 30, 2009 (doc. no. 1) and the case was docketed at the above number in this Court naming the following Defendants:   the State Correctional Institution at Somerset (SCI-Somerset); Gerald Rozum, Superintendent at SCI-Somerset; Donald Orr, Unit Manager of C-Unit at SCI-Somerset; Nick Patton, Supervisor of the Community Work Program at SCI-Somerset; Joseph Visinsky, Correctional Health Care Administrator at SCI- Somerset; Carl Murphy, a prisoner in the custody of the Pennsylvania Department of Corrections (DOC) residing at SCI- Somerset; Pennsylvania

Board of Probation and Parole (Parole Board); Conewago Treatment Center; Brian Elliot, Director of Pre-Release Program; Dave Hostetter, Director of the Conewago Community Corrections Center (CCCC); Nicole Pruey, Assistant Director of CCCC; and Omar Rodriguez, Counselor at CCCC. Plaintiff claims that Defendants are liable pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983 as well as Pennsylvania state law. The Commonwealth Defendants including Brian Elliot, State Correctional Institution at Somerset, Gerald Rozum, Donald Orr, Richard Rakas, Nick Patton, Joseph Visinsky, Pennsylvania Board of Probation and Parole have filed a motion to dismiss.

### A. Standard of Review

The Commonwealth Defendants have filed a motion to dismiss pursuant to Fed. R. Civ. P. 12 (b)(6). A complaint must be dismissed pursuant to Fed. R. Civ. P. 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v.Twombly, 550 U.S. 554, 556 (2007) (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The court must accept as true all allegations of the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff. Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir. 1985). The Court, however, need not accept inferences drawn by the plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the court accept legal conclusions set forth as factual allegations. Bell Atlantic Corp., 550 U.S. at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp., 550 U.S. at 555. Additionally, "a civil rights claim 'must contain specific allegations of fact which indicate a deprivation of constitutional rights; allegations which are nothing more than broad, simple and conclusory statements are insufficient to state a claim under § 1983." ' Coronado v. Goord, No. 99

2

-1674, 2000 WL 1372834, at *2 (S.D.N.Y. Sept. 25, 2000) (quoting Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 887 (2d Cir. 1987)). *See also* Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1951 (U.S. 2009) (holding that, while the Complaint need not contain detailed factual allegations, it must contain more than a "formulaic recitation of the elements" of a constitutional claim and must state a claim that is plausible on its face) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) and providing further guidance on the standard set forth therein).

The United States Court of Appeals for the Third Circuit has recently held that, when determining whether to dismiss a complaint for failing to state a claim upon which relief can be granted, a district court should apply a two-part test in order to determine whether a pleading's recitation of facts is sufficient. Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009). "First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Id*. at 210-11 (citing Iqbal, 129 S.Ct. at 1949). "Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "'plausible claim for relief.'" Fowler, 578 F.3d at 211 (quoting Iqbal, 129 S.Ct. at 1950). Finally, a court must employ less stringent standards when considering pro se pleadings than when judging the work product of an attorney. Haines v. Kerner, 404 U.S. 519, 520 (1972).

**B. Plaintiff's Allegations**

Plaintiff sets forth the following allegations in his Complaint. On September 23, 2007, while in custody at SCI-Somerset, Plaintiff was participating in the Community Work Program (CWP) at Laural State Park located in Somerset County, Pennsylvania. On that date, Defendant Patton ordered Plaintiff and three other inmates to split logs utilizing a "Sure Split" 20 ton log splitter. A warning label on the log splitter provided that only one person should operate the machine at a time. Plaintiff articulated this warning to Defendant Patton who told him it was okay

3

and to go back to work. DOC policy provides that inmates must follow orders from DOC personnel and failure to do so may result in a misconduct.

On September 23, 2007, the work detail was divided into three tasks: Plaintiff loaded the logs into the splitter; inmate Murphy pulled the lever activating the machine, and inmate Petruza removed the split logs. None of the inmates were trained or qualified to properly operate the log splitter nor informed of any guidelines for using such equipment. Defendant Murphy, who had caught his finger in the splitter the day before, was wearing a splint and was negligently and totally misusing the log splitter for its intended purpose. At approximately 11:30 a.m., Plaintiff loaded a log into the log splitter. Before he could remove his hand, Defendant Murphy activated the splitter and Plaintiff's left ring finger was crushed in the piston and was attached only by sliver. An EMS unit was called and Plaintiff was transported via ambulance to Somerset Community Hospital. Dr. Gary Schmidt performed emergency surgery consisting of using pins and wire to restructure the finger. Due to the accident, Plaintiff has lost most of the use of his finger, including the ability to bend it, and its present condition causes tingling, which is accentuated in cold weather. After the surgery, Plaintiff was discharged and placed in the infirmary overnight for observation.

On October 1, 2007, Plaintiff was released from SCI-Somerset to the Conewego Treatment Center (CTC) and was placed in a drug and alcohol program due to his previous addiction to heroin. After two and one-half weeks, CTC terminated Plaintiff's treatment program and transferred him to the Conewago Community Corrections Center (CCCC). That same day, Plaintiff was instructed to sign forms in order to be provided with medical insurance via "Access Card."

The last visit Plaintiff had with Dr. Schmidt for post-operative care was on November 11, 2007. On that date, Dr. Schmidt ordered physical therapy four times a week for six weeks. On November 11, 2007, Plaintiff informed the medical department at CCCC of Dr. Schmidt's orders but they refused Plaintiff to use to prescribed physical therapist located in Somerset County.

4

Specifically, personnel at CCCC threatened Plaintiff that if he did not use a local physical therapist he would be returned to prison. The physical therapist CCCC chose was Dr. Julio Torres at St. Joe's Hospital in Reading, Pennsylvania.

Plaintiff commenced physical therapy on November 15, 2007 and attended appointments four times a week as ordered for approximately 3½ weeks. On December 8, 2007, Defendant Rodriguez ordered Plaintiff to seek employment, which violated Dr. Schmidt's no-work order of November 11, 2007. Defendant Rodriguez' order prevented Plaintiff from attending physical therapy. When Plaintiff told Defendant Rodriguez of the no-work order he told Plaintiff that if he did not seek employment, he would be returned to prison. Plaintiff spoke to Dr. Torres who reluctantly decided to terminate physical therapy in light of Defendant Rodriguez' threat of imprisonment.

On December 9, 2007, Plaintiff gained employment at Adelphia Seafood in Reading, Pennsylvania. On December 12, 2007, while stacking trays of food, the rack toppled over and fell on Plaintiff's left hand. When Plaintiff informed his supervisor, he released Plaintiff from employment until his finger was fully healed. Plaintiff did not tell Defendant Rodriguez about the status of his employment but rather spoke to Defendant Nicole Pruey who told Plaintiff she would take care of it.

On December 13, 2007, Plaintiff walked into a communal bathroom at CCCC and discovered two other residents injecting heroin. Plaintiff informed Pruey about the situation and further advised her that Plaintiff's roommates were selling and using heroin. Defendant Pruey told him that he complained excessively and that he should leave if he did not like it. As Plaintiff was suffering tremendous pain, and had a previous addiction to heroin, he injected the drug to relieve the pain. On December 14, 2007, Plaintiff spoke to Defendant Pruey again and requested to be permitted to resume physical therapy and to be moved to another room. On that same date, he

5

packed his belongings and left CCCC. He relapsed on heroin while evading apprehension and on February 2, 20098, he surrendered himself to authorities in Reading, Pennsylvania.

To this date, Plaintiff experiences a tingling sensation in his left ring finger and it remains deformed with limited mobility.

### C. Liability under 42 U.S.C. § 1983

Plaintiff's Complaint seeks to assert liability against Defendants pursuant to, *inter alia*, 42 U.S.C. § 1983. To state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements. He must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. West v. Atkins, 487 U.S. 42 (1988); Parratt v. Taylor, 451 U.S. 527, 535 (1981), *overruled in part on other grounds*, Daniels v. Williams, 474 U.S. 327, 330-331 (1986).

The present motion top dismiss was filed by Defendants SCI-Somerset, Rozum, Orr, Rakas, Patton, Visinsky, Elliot and the Pennsylvania Board of Probation and Parole (Board). Liability against these Defendants is discussed below.

1,      Defendants SCI-Somerset and the Board

Plaintiff's claims against SCI-Somerset and the Board are barred by the Eleventh Amendment to the United States Constitution, which provides as follows.

> The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

The withdrawal of jurisdiction in the Eleventh Amendment confers upon the individual states immunity from suit in the federal courts. This grant of sovereign immunity encompasses not only suits in which a state is a named defendant but also extends to suits brought

6

against state agents and state instrumentalities that have no existence apart from the state, *see* Regents of the University of California v. Doe, 519 U.S. 425 (1997); Alabama v. Pugh, 438 U.S. 781, 782 (1978), and applies to suits brought by citizens of the defendant state as well. *See* Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 100 (1984).

Notwithstanding, the immunity provided in the Eleventh Amendment is not absolute. A state may expressly waive its grant of sovereign immunity by state statute or constitutional provision. In addition, Congress can abrogate the States' Eleventh Amendment immunity through a statute enacted under constitutional authority granting Congress the power to regulate the activities of the states. *See, e.g.*, Pennsylvania v. Union Gas Co., 491 U.S. 1, 15 (1989) (Commerce Clause, which allows Congress to restrict interstate trade activity); Atascadero State Hospital v. Scanlon, 473 U.S. 234, 246 (1985) (section five of the Fourteenth Amendment, which allows Congress to enforce the provisions of the Fourteenth Amendment). However, Congress must express its intention to abrogate the Eleventh Amendment in unmistakable language in the statute itself. Seminole Tribe of Florida v. Florida, 517 U.S. 44, 55 (1996); Atascadero, 473 U.S. at 246.

The Commonwealth of Pennsylvania has not waived its grant of sovereign immunity under the Eleventh Amendment. In fact, the Commonwealth specifically has reserved its immunity against federal suits in 42 Pa. Cons. Stat. Ann. § 8521(b), which provides that "[n]othing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States." None of the exceptions to sovereign immunity contained in 42 Pa. Cons. Stat. § 8522 are applicable to the Plaintiff's allegations. Moreover, the federal courts repeatedly have held that Congress did not abrogate the state's Eleventh Amendment immunity when it enacted the Civil Rights Act, 42 U.S.C. § 1983. *See, e.g.*, Will v. Michigan Dept. of State Police, 491 U.S. 58, 66 (1989) ("Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide

7

a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties."); Quern v. Jordan, 440 U.S. 332, 341 (1979); Boykin v. Bloomsburg Univ. of Pa., 893 F. Supp. 378 (M.D. Pa. 1995) (holding that states' immunity has not been abrogated for actions brought under §§ 1981, 1983, 1985, and 1986), *aff'd*, 91 F.3d 122 (3d Cir. 1996), *cert. denied*, 519 U.S. 1078 (1997).

The Pennsylvania Department of Corrections (DOC) is a part of the executive department of the Commonwealth of Pennsylvania. *See* Pa. Stat. tit. 71, § 61. SCI-Somerset is not an individual entity; rather, it is merely a facility run by the DOC. Thus, it shares in the Commonwealth's Eleventh Amendment immunity. *See* Lavia v. Pennsylvania, Dept. of Corrections, 224 F.3d 190, 195 (3d Cir. 2000). Similarly, the Board of Parole is also a Commonwealth agency having no existence apart from the Commonwealth. Harris v. Zappan, No. 97-4957, 1999 WL 360203, at *2 (E.D. Pa. May 28, 1999). Thus, the Commonwealth Defendants' Motion to Dismiss should be granted as to Plaintiff's claims against Defendants SCI-Somerset and the Board. *Accord* Clark v. Pennsylvania Dept. of Corrections, No. 09-1195, 2009 WL 2447835, 1 (E.D. Pa. Aug. 6, 2009).

2. Plaintiff's Claims against Defendants' in their Official Capacity

In Will v. Michigan Department of State Police, 491 U.S. 58 (1989), the Court held that "neither a state nor its officials acting in their official capacities are 'persons' under §1983." *Id*. at 71. Accordingly, a section 1983 action against a state official in his official capacity is not a suit against the person but it is a suit against the state itself and as such, the action is barred by the Eleventh Amendment. *Id*. Thus, to the extent Plaintiff is suing the Commonwealth Defendants in their official capacities, such claims are barred by sovereign immunity and Defendants' Motion to Dismiss should be granted in this regard.

3. Defendants Rozum, Orr, Rakas, Patton, Visinsky and Elliot

8

In Hafer v. Melo, 502 U.S. 21, 31 (1991), the Supreme Court considered the liability of a government official sued in her individual capacity for her official actions. The Court held that "state officials, sued in their individual capacities, are 'persons' for purposes of §1983." Notwithstanding, in order to establish personal liability against a defendant in a section 1983 action, that defendant must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*. Rizzo v. Goode, 423 U.S. 362 (1976). Accordingly, individual liability can be imposed under section 1983 only if the state actor played an "affirmative part" in the alleged misconduct. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988); Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986). Personal involvement by a defendant can be shown by alleging either personal direction or actual knowledge and acquiescence in a subordinate's actions. Rode, 845 F.2d at 1207. *See also* Keenan v. Philadelphia, 983 F.2d 459, 466 (3d Cir. 1992); Andrews v. Philadelphia, 895 F.2d 1469, 1478 (3d Cir. 1990).

In his Complaint, Plaintiff provides the following information as to the Commonwealth Defendants. Defendant Rozum was the superintendent at SCI-Somerset and was responsible for managing its day to day operations including the pre-release program. Defendant Orr was the Unit Manager of C-Unit at SCI-Somerset and was responsible for supervising the process of a prisoner acquiring pre-release status. Defendant Rakas was the Counselor at SCI-Somerset and was responsible for initiating and executing all steps necessary to request pre-release status. Defendant Patton was the Supervisor of the Community Work Program at SCI-Somerset and was responsible to train and supervise the prisoner employees. Defendant Joseph Visinsky was the Correctional Health Care Administrator (CHCA) at SCI-Somerset and was responsible for managing the medical department and overseeing the medical treatment of prisoners. Defendant Elliot was the Director of Pre-Release Programs for the region and was responsible for managing the treatment and community corrections centers for the region.

With respect to Defendants Rozum, Orr, Rakas and Elliot, Plaintiff's allegations, construed liberally, do not support a finding that any of these Defendants had any knowledge of, or personal involvement in, the claims alleged in the Complaint. He does not allege that any of these Defendants participated in any way whatsoever in the alleged actions or inactions. Nor does he allege indirect involvement that would imply that any of these Defendants acquiesced in the alleged unconstitutional misconduct. Specifically, none of Plaintiff's allegation establish that any of these Defendants were even aware of Plaintiff's concerns. Thus, as to these Defendants, it is clear that the Plaintiff is seeking to impose individual liability against the Commonwealth Defendants upon the theory of *respondeat superior*, which cannot support a section 1983 action.

In his Memorandum of Law in Opposition to Defendant's [sic] Motion to Dismiss (doc. no. 12), Plaintiff states that, in his Complaint he alleged that Defendant Patton had personal involvement in the offending incident and knowledge of a prior similar incident of the day before concerning inmate Murphy where his hand was caught in the machine. He further alleged that the log splitter had a warning label that specifically warned that only one person was to work the machine at one time. Finally, Plaintiff alleged that when he articulated this to Defendant Patton, he was told that it was okay and to get back to work. Also in his Memorandum of Law, Plaintiff attempts to allege supervisory liability against Defendant Visinsky on the basis of his approval of Plaintiff to a pre-release facility. Specifically, Plaintiff alleges that Defendant Visinsky should not have cleared him for pre-release status due to the treating physician's order of follow up care visits at Somerset Hospital and he should have known that he would not receive proper follow up care once placed in a facility 100's of miles from his treating physician. In addition, Visinsky would have known that he would be required to work as part of his pre-release status.

In Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir.1989), the Court of Appeals for the Third Circuit concluded that a judgment could not properly be entered against the defendant

10

based on supervisory liability absent an identification of a specific supervisory practice or procedure that the defendant failed to employ. "[U]nder the teachings of City of Canton[1] it is not enough for a plaintiff to argue that the constitutionally cognizable injury would not have occurred if the superior had done more than he or she did. The district court must insist that [the plaintiff] identify specifically what it is that [the defendant] failed to do that evidences his deliberate indifference." *Id*. With respect to supervisory liability for Eighth Amendment claims, plaintiffs must first identify a "specific supervisory practice or procedure" that the defendant supervisor failed to employ, and then prove the following: 1) the existing custom and practice without that specific practice or procedure created an unreasonable risk; 2) the supervisor was aware that the unreasonable risk was created; 3) the supervisor was indifferent to that risk; and 4) the injury resulted from the policy or practice. Beers-Capitol v. Whetzel, 256 F.3d 120, 134 (3d Cir. 2001) (citing Sample, 885 F.2d at 1118). The absence of a policy or failure to establish a policy can give rise to liability. Natale v. Camden County Corr. Facility, 318 F.3d 575, 585 (3d Cir. 2003).

The simplest way for a plaintiff to make out such a claim is to demonstrate a supervisor's failure to respond appropriately when confronted by a pattern of injuries similar to the plaintiff's, thereby suggesting deliberate indifference on the part of the supervisor. Sample, 885 F.2d at 1118. The Court of Appeals for the Third Circuit further instructed that that is not the only way to make out such a claim, as "there are situations in which the risk of constitutionally cognizable harm is so great and so obvious that the risk and the failure of supervisory officials to respond will alone support findings of the existence of an unreasonable risk, of knowledge of that unreasonable risk, and of indifference to it." Beers-Capitol, 256 F.3d at 134 (citation omitted). Thus, for Plaintiffs' claim seeking to hold Defendants Patton and/or Visinsky liable for a deficient policy, he

---

1. City of Canton v. Harris, 489 U.S. 378 (1989).

11

must show either that Defendant Patton and/or Visinsky failed to adequately respond to a pattern of past occurrences of injuries like the plaintiff's or that the risk of constitutionally cognizable harm was so great and so obvious that the risk and the failure of Defendant Patton and/or Visinsky to respond supports a finding that the four-part test stated above is met. None of Plaintiff's allegations support liability against either Defendant Patton or Defendant Visinsky in this regard.

With respect to Defendant Patton, Plaintiff has not alleged that he was aware of a "pattern" of injuries excepting one that had occurred the day before with inmate Murphy. One such instance does not constitute a "pattern of past occurrences" as contemplated by Sample. Nor has he alleged that the risk of constitutionally cognizable harm was so great and so obvious that Defendant Patton must have known of the excessive risk but was indifferent to it. Although the facts may support liability on a theory of negligence, it can not be inferred that Defendant Patton "knowingly and unreasonably disregard[ed] an objectively intolerable risk of harm," Farmer v. Brennan, 511 U.S. 825, 846 (1994), based on his alleged failure to have read and/or heeded the warning label on the machine. As the Court of Appeals for the Third Circuit has explained, it is not enough to allege that defendant should have recognized the excessive risk and responded to it; a Plaintiff must show that the defendant must have recognized the excessive risk and ignored it. Beers-Capitol, 256 F.3d at 138 (citing Farmer). Here, Plaintiff's allegations concerning the operation of the log splitter on September 27, 2007, do not show that Defendant Patton must have recognized an excessive risk and ignored it. Instead, such allegations, at the most, sound in negligence, which is not actionable under 42 U.S.C. § 1983.[2]

---

2. The Supreme Court repeatedly has made it patently clear that negligence claims cannot support liability under section 1983. *See, e.g.,* County of Sacramento v. Lewis, 523 U.S. 833 (1998); Collins v. City of Harker Heights, Texas, 503 U.S. 115 (1992); DeShaney v. Winnebago County Dept. of Social Services, 489 U.S. 189 (1989); Davidson v. Cannon, 474 U.S. 344, 348 (1986) (clarifying that lack of due care by prison officials does not state a claim under either the
(continued...)

In his Memorandum of Law, Plaintiff asserts that Defendant Patton is liable under the "substantive" prong of the Due Process Clause, which bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them. The constitutional right to "substantive due process" under the Fourteenth Amendment protects individuals against arbitrary governmental action regardless of the fairness of the procedures used to implement them.[3] The Supreme Court has declined to set forth a precise rule outlining the contours of "arbitrary" conduct. Notwithstanding, in County of Sacramento v. Lewis, 523 U.S. 833 (1998), the court instructed that the substantive component of the Due Process Clause can only be violated by governmental employees when their conduct amounts to an abuse of official power that "shocks the conscience." In so holding, the court reiterated its long standing jurisprudence that only the most egregious official conduct can be said to be "arbitrary" in the constitutional sense. *Id*. at 848-850. The court further instructed that courts should employ a variable range of culpability standards, dependant upon on the circumstances of the case, in determining whether certain actions rise to a constitutionally "shocking" level. *Id*.

In Lewis, the court was confronted with the actions of a policeman who killed a motorcyclist during the course of a high speed chase. In determining what substantive due process standard should be applied to the facts before it, the court noted the different circumstances and government interests attendant in high speed police chases as opposed to those attendant in the

---

2. (...continued)
substantive or the procedural aspects of the Due Process Clause); Daniels v. Williams, 474 U.S. 327, 328 (1986) (holding that "the Due Process clause is simply not implicated by a negligent act of an official causing unintended loss or injury to life, liberty or property").

3. *See* Collins v. Harker Heights, 503 U.S. 115, 126 (1992) (holding that the Due Process Clause was intended to prevent government officials from abusing power, or employing it as an instrument of oppression); Wolff v. McDonnell, 418 U.S. 539, 558 (1974) ("The touchstone of due process is protection of the individual against arbitrary action of government.").

pretrial custody setting. In light of this recognition, the court determined that the "intent to harm" standard was appropriate to determine whether the defendant's conduct rose to constitutional significance because, like prison officials facing a riot, police facing a rapidly evolving and potentially dangerous situation are required to make quick decisions without the benefit of time for deliberation. The court noted that in non-emergency situations such as pre-trial detention where circumstances are not fast moving, the lower standard of "deliberate indifference" should be applied to determine whether a defendant's actions rise to a constitutionally shocking level. *Id*. at 851.

Plaintiff does not allege any emergent circumstances with regard to his claim. Thus, the appropriate standard to determine whether defendants' actions "shock the conscience" and thereby offend constitutional guarantees, is whether Defendant Patton's actions and/or omissions can be characterized as "deliberately indifferent." As stated above, Plaintiff seeks to impose liability on the basis of his allegations that Defendant Patton failed to abide by the warning label on the log splitter and was aware of a prior injury from the day before. While such actions may be violative of state law, they are not so offensive as to "shock the conscience" for purposes of imposing liability under 42 U.S.C. § 1983. Thus, even accepting the truth of Plaintiff's allegations, he has failed to demonstrate that he was exposed to arbitrary government action in violation of right to substantive due process. Construed broadly, his allegations show nothing more than Defendant Patton may not have exercised due care. However, as stated above, the Supreme Court has made it patently clear that mere negligence cannot support liability under section 1983. It follows that Plaintiff has failed to state a claim upon which relief may be granted under 42 U.S.C. § 1983 against Defendant Patton. Thus, Defendants' Motion to Dismiss should be granted as to Plaintiff's individual liability claims against Defendant Patton.

The same is true with respect to Defendant Visinsky. The Court initially notes that it is well settled that health care administrators do not prescribe medications or make decisions

regarding the course of treatment prescribed to inmates. As such, courts generally have found that prison health care administrators did not act with "deliberate indifference" when the prisoner plaintiff is receiving treatment from the prison doctor. *See, e.g.* Miller v. Hoffman, No. 97-7987, 1999 WL 415397, *11 (E.D. Pa. June 22, 1999) (collecting cases).

Plaintiff alleges that Defendant Visinsky should not have cleared him for pre-release status due to the treating physician's order of follow up care visits at Somerset Hospital in that he should have known that he would not receive proper follow up care once placed in a facility hundreds of miles from his treating physician and that he would be required to work as part of his pre-release status. These allegations do not even come close to meeting the deliberate indifference standard discussed above. Moreover, Plaintiff did receive care from his surgeon after he was released from SCI-Somerset as he alleged that his last visit to Dr. Schmidt was on November 11, 2007 (doc. no. 1-2, p. 8). Thus, there is no basis to conclude that Defendant Visinsky should have been aware that he would not receive adequate health care. Moreover, if Plaintiff wanted to stay at SCI-Somerset, he could have refused his pre-release; obviously, he chose not to do so. Plaintiff's allegations against Defendant Visinsky simply do not show that he acted with deliberate indifference in approving him for pre-release status. Thus, Defendants' Motion to Dismiss should be granted as to Plaintiff's individual liability claims against Defendant Visinsky.

### D. State Law Claims

With the exception of Defendant Patton, Plaintiff's state law claims should be dismissed against the Commonwealth Defendants on the basis of sovereign immunity. The Commonwealth of Pennsylvania, and its officials and employees acting within the scope of their duties, enjoy sovereign and official immunity unless the General Assembly specifically waives the immunity. 1 Pa. Cons. Stat. § 2310. DOC and its employees are protected under the grant of sovereign immunity in 1 Pa. Cons. Stat. § 2310. Collins v. Bopson, 816 F. Supp. 335 (E.D. Pa.

1993) (under Pennsylvania law, corrections officers were statutorily immune from suit); Moore v. Commonwealth 114 Pa. Commw. 56, 538 A.2d 111 (1988), *appeal dismissed sub nom.*, 523 Pa. 418, 567 A.2d 1040 (1990).

Thus, the Commonwealth Defendants enjoy sovereign immunity from plaintiff's state law claims unless they come within the nine exceptions to immunity specified by the Pennsylvania legislature in 42 Pa. Cons. Stat. Ann. § 8522:

    (1)    vehicle liability;

    (2)    medical-professional liability;

    (3)    care, custody or control of personal property;

    (4)    real estate, highways and sidewalks;

    (5)    potholes and other dangerous conditions;

    (6)    care, custody or control of animals;

    (7)    liquor store sales;

    (8)    national Guard activities; and

    (9)    toxoid and vaccines.

42 Pa. Cons. Stat. Ann. § 8522(b).

Here, the only category applicable to Plaintiff's allegations concerning the Commonwealth Defendants is the third category regarding personal property, 42 Pa. Cons. Stat. § 8522(b)(3). For this exception to apply, the personal property itself must directly have caused defendant's injuries, not merely facilitated it. Warnecki v. Southeastern Pennsylvania Transportation Authority, 689 A.2d 1023 (Pa. Commw. 1997); Bufford v. Department of Transportation, 670 A.2d 751 (Pa. Commw. 1996). Here, Plaintiff alleges that he directly was injured by the personal property, *i.e.*, the log splitter. Defendants do not directly address this claim except to argue that none of the Defendants come within the exceptions listed in 42 Pa. Cons. Stat. Ann. § 8522(b).

16

Because Plaintiff's allegations may support liability under 42 Pa. Cons. Stat. Ann. § 8522(b)(3) against Defendant Patton, Defendants' Motion to Dismiss should be denied as to Plaintiff's state law claim of negligence against Defendant Patton. The Motion to Dismiss should be granted as to Plaintiff's state law claims against Defendants Rozum, Orr, Rakas, Visinsky and Elliot. *Cf*. Shoop v. Dauphin County, 766 F. Supp. 1327, 1334 (M.D. Pa. 1992) (state trooper had statutory immunity from suit with regard to pendent state law claims of false imprisonment, assault and battery, malicious abuse of legal process and intentional infliction of emotional distress, even though plaintiffs were alleging commission of intentional tort), *aff'd*, 945 F.2d 396 (Table) (3d Cir. 1991), *cert. denied*, 502 U.S. 1097 (1992).

### E. Plaintiff's Claims under the Pennsylvania Constitution

Defendants also argue that Plaintiff's claims for monetary damages for violations of the Pennsylvania Constitution must be dismissed because there is no statutory authority or case law authorizing a private cause of action for money damages resulting from an alleged violation of the Pennsylvania Constitution. In this regard, Pennsylvania law does not include a statutory equivalent to 42 U.S.C. § 1983. Moreover, the question of whether the Pennsylvania Constitution provides a cause of action for damages remains unanswered by the Pennsylvania Supreme Court. Notwithstanding, a majority of district courts in this circuit that have decided the issue have concluded that money damages are not available for claims under the Pennsylvania Constitution. *See, e.g.*, O'Hara v. Hanley, No. 08-1393, 2009 WL 2043490, at *9 (W.D. Pa. July 8, 2009); Ryan v. Gen. Mach. Prods., 277 F.Supp.2d 585, 595 (E.D. Pa. 2003) (finding that "the Supreme Court of Pennsylvania has not ruled on the issue ..., and the federal courts in this Circuit that have considered the issue have concluded that there is no such right under the Pennsylvania Constitution"); Douris v. Schweiker, 229 F.Supp.2d 391, 405 (E.D. Pa. 2002) (noting that "federal courts in this Circuit that

have considered the issue have concluded that there is no such right under the Pennsylvania Constitution"); <u>Lees v. West Greene Sch. Dist.</u>, 632 F.Supp. 1327, 1335 (W.D. Pa. 1986). In light of this authority, Defendants' Motion to Dismiss should be granted as to Plaintiff's claims for monetary damages for violations of the Pennsylvania Constitution.

### III.  CONCLUSION

For the reasons set forth above, it is respectfully recommended that the Motion to Dismiss filed by the Commonwealth Defendants (doc. no. 7) be granted except as to Plaintiff's state law claim of negligence against Defendant Patton.

In accordance with the applicable provisions of the Magistrate Judges Act [28 U.S.C. § 636(b)(1)(B) & (C)] and Rule 72.D.2 of the Local Rules of Court, the parties shall have ten days from the date of the service of this report and recommendation to file written objections thereto. Any party opposing such objections shall have ten days from the date on which the objections are served to file its response. A party's failure to file timely objections may constitute a waiver of that party's appellate rights.

_____
Lisa Pupo Lenihan
U.S. Magistrate Judge

Dated: November 19, 2009


cc:   James E. Braun
      GM-4693
      SCI Somerset
      1600 Walters Mill Road
      Somerset, PA 15510